**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-CR-69-JED |
| v. ) | |
| ) | |
| CHARLES JASON MORELAND, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court are two motions to dismiss, filed by the defendant, Charles Jason Moreland. In the first motion (Doc. 22), Moreland asserts that 18 U.S.C. § 2261(A)(2)(B) – the cyberstalking statute under which he was indicted – is unconstitutional because it (1) violates the First Amendment to the United States Constitution, (2) is unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause, and (3) is unconstitutional as applied. In his second motion (Doc. 44), which he first sought leave to file three months after the Indictment was unsealed, he argues that the Indictment is insufficient and lacks sufficient evidentiary support to the extent that it includes reference to the "immediate family" of the alleged victim, CP.

**I.     Background**

In a single count Indictment returned in June 2016, Moreland was charged with cyberstalking in violation of 18 U.S.C. § 2261A(2)(B). (Doc. 2). The Indictment alleges that, from in or about May 2015 and continuing through the date of the Indictment, Moreland,

> with the intent to injure, harass, and intimidate, used the mail, any interactive computer service, electronic communication service, electronic communication system of interstate commerce, and any other facility of interstate commerce, including e-mail, FedEx, and social media websites, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to

>cause substantial emotional distress to CP, a person known to the Grand Jury, and CP's immediate family.

(Doc. 2). The charging language largely tracks the statutory language found in 18 U.S.C. § 2261A(2)(B).

The Indictment followed hundreds of communications from Moreland to CP, who is a journalist and author working in the Washington, DC area. Moreland's communications to CP were through e-mails, social media, and deliveries to CP's office. Although CP never responded to Moreland, several of his communications to CP referenced violence, indicated that he believed that CP had threatened him or was trying to harm or kill him, stated that CP better make sure to kill him, and ultimately threatened that it was "time to just eliminate things" and that he was ready for a "fight to the death." Moreland also advised CP that the federal government had raided his house.

In his first dismissal motion, Moreland glosses over the language in many of the communications directed at CP and attempts to characterize them as obviously harmless and non-threatening. To be clear, many of Moreland's writings were merely nonsensical or strange (*see, e.g.* Plaintiff's Exhibit (PX) 17, 32 [volunteering, in a one-sentence email, that "I'm not homosexual"]) and many referenced political topics. But several other communications contained references to violence or perceived threats that were never made to Moreland, and his repeated contacts appear intended to convey dissociation with reality. He repeatedly represented that he would stop contacting CP, only to almost immediately contact her again. (*E.g.*, PX 29, 30, 51, 52-60). His contacts, some of which initially touched on issues of arguable public concern, ultimately escalated, became personal in referencing CP and her family members, and directly referring to violence and a fight to the death.

Examples of Moreland's writings – which, as noted, CP never responded to – included the following:

"I don't think you understand. . . . I don't want anyone else!!!"

"I want you."

"So, if I come to DC you will ignore me and say you have no idea who I am..."

"so, you want to kill me"

"If you want to kill me... Or, if anyone wants to kill me they know exactly where I am!!! I welcome it!!!! however, they better make sure they do not miss!"

"I don't like threats."

". . . if you have interest in harming me, please make sure you follow through on the implied."

Two days after Moreland wrote to tell CP that he doesn't "like threats," he wrote, "f-it!! time to just eliminate things!!"

"No one has won anything!! Feds raided my house again. So, the gloves are now off!!! Thus, a fight to the death now!!

In his briefing, Moreland asserts that "he consistently repeated that he is not a danger to anyone and intends no harm to anyone [and] repeatedly states he won't continue to contact [CP] if his communications are unwanted," and he then notes that CP "never told [him] to stop sending her emails, and never apparently asked any administrator, police, or agency to inform Moreland to stop contacting her." (Doc. 22 at 2). Yet, he has cited no authority that would support a conclusion, as a matter of law, that an alleged victim has an obligation to advise a defendant to "stop" cyberstalking or that a defendant can absolve himself of criminal responsibility by merely claiming that he is not dangerous. Although Moreland did repeatedly

indicate that he would not contact CP again and he repeatedly apologized to her, those representations were often immediately followed up with additional communications to CP.[1]

## II. Discussion

### A. Overbreadth Challenge

Moreland first argues that § 2261A(2)(B) is facially overbroad and unconstitutional because it "wrongfully infringes on protected speech." (Doc. 22). The overbreadth doctrine authorizes "the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). "Facial challenges, . . . including those based on overbreadth, 'are disfavored for several reasons,'" including concerns that such challenges counteract principles of judicial restraint and separation of powers. *United States v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014), *cert. denied,* 135 S. Ct. 1469 (2015) (quoting *Washington State Grange v. Washington State Repub. Party*, 552 U.S. 442, 450 (2008)). As a result, the overbreadth doctrine "has been employed . . . sparingly and only as a last resort." *Brune*, 767 F.3d at 1019 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

"To succeed in an overbreadth challenge, thereby invalidating *all* enforcement of the law, a challenger 'must show that the potential chilling effect on protected expression is 'both real and substantial.'" *Brune*, 767 F.3d at 1018 (quoting *Jordan v. Pugh,* 425 F.3d 820, 828 (10th Cir. 2005)). "Finding *some* overbreadth only satisfies part of the inquiry, as the challenger must also show that the 'law punishes a 'substantial' amount of protected free speech, 'judged in relation to

---

[1] At the hearing on the motions, Moreland's counsel acknowledged that the communications must be viewed in the context of the whole, rather than isolating any single contact. The Court has reviewed all of the communications presented by the parties, which includes Plaintiff's Exhibits (PX) 1 through 394 and Defendant's Exhibits (DX) 1 through 5.

the statute's plainly legitimate sweep.'" *Brune*, 767 F.3d at 1018 (quoting *Hicks,* 539 U.S. at 118–19). "[E]ven where a fair amount of constitutional speech is implicated, [the courts] will not invalidate the statute unless significant imbalance exists." *Id.*

The crux of Moreland's overbreadth argument is that § 2261A(2)(B) could be stretched to prohibit some protected speech, such as mere heckling or critical commentary that may be considered distressing to a particularly sensitive comedian, abortion provider, or politician. (*See* Doc. 22 at 6-7). Circuit Courts of Appeal have rejected similar defense challenges to the cyberstalking statute. In *United States v. Sayer*, 748 F.3d 425, 430 (1st Cir. 2014), the court considered a defendant's overbreadth challenge to a prior version of the statute which, among other things, made it unlawful for a defendant to act with the intent to "injure, harass . . . or cause substantial emotional distress to a person in another State [by use of the mail or any facility in interstate commerce] to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of . . . serious bodily injury." The district court rejected that challenge and denied the defendant's motion to dismiss the indictment under the statute. The First Circuit likewise rejected the overbreadth challenge and affirmed:

> [Defendant] argues that because the text of § 2261A(2)(A) encompasses speech that causes only substantial emotional distress, it proscribes protected expression that is merely annoying or insulting. His interpretation of [the statute] is unconvincing because it takes the term "substantial emotional distress" wholly out of context. Other circuits have rejected similar overbreadth claims. . . . The interstate stalking statute, which prohibits a course of conduct done with "intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass or intimate, or cause substantial emotional distress" clearly targets conduct performed with serious criminal intent, not just speech that happens to cause annoyance or insult.

*Sayer*, 748 F.3d at 435 (citations omitted).

As the *Sayer* court concluded, the statute's proscription of a course of conduct done with the *specific intent* to injure, harass, or intimidate "clearly targets conduct performed with serious

criminal intent, not just speech that happens to cause annoyance or insult." *Id.*; *see also United States v. Shrader*, 675 F.3d 300, 311 (4th Cir. 2012) (rejecting vagueness challenge to a stalking statute and noting that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is prescribed") (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)). Mr. Moreland's examples here – a heckler loudly criticizing a comedian's material, a protester calling an abortion provider a "baby killer," or a political protestor "promising to beat a politician at the next election" – ignore the statute's intent, "substantial emotional distress," and "course of conduct" requirements. *See Sayer*, 748 F.3d at 435, n.9; 18 U.S.C. § 2261A(2); *see also* 18 U.S.C. § 2266(2) ("The term 'course of conduct' means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."). In addition, those examples are inapposite to Moreland's express references to violence in his direct and numerous communications to CP. Finally, "the 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Sayer*, 748 F.3d at 436 (citing *United States v. Williams*, 553 U.S. 285, 303 (2008)).

Other Circuit Courts of Appeal have rejected similar overbreadth challenges to the cyberstalking statutes. *See United States v. Petrovic*, 701 F.3d 849, (8th Cir. 2012) ("Because a substantial number of the statute's applications will not be unconstitutional, we decline to use the "'strong medicine' of overbreadth to invalidate the entire [statute].'") (citation omitted); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (agreeing with the Eight Circuit's reasoning in *Petrovic* and rejecting the defendant's argument that, because the statute did not define "substantial emotional distress" or "harassment," it was overbroad); *United States v. Bowker*, 372 F.3d 365, 378 (6th Cir. 2004), vacated on other grounds, 543 U.S. 1182 (2005), reinstated in

6

relevant part, 125 F. App'x 701 (6th Cir. 2005)  (rejecting facial overbreadth challenge to a prior version of the statute and stating, "We fail to see how a law that prohibits interstate travel with the intent to kill, injure, harass or intimidate has a substantial sweep of constitutionally protected conduct"); *see also generally O'Brien v. Welty*, 818 F.3d 920, 930 (9th Cir. 2016) (citing *Osinger* and stating, "The fact that the terms ['harass' or 'intimidate'] may in some cases entail interpretation is not enough to sustain an overbreadth or vagueness challenge.").

Moreland acknowledges that certain types of speech are not protected by the First Amendment, including defamation, fraud, obscenity, incitement, true threats, and speech integral to criminal conduct. (*See* Doc. 22 at 8).  But he argues that, by "failing to limit complainants to private figures and by encompassing an undefined 'substantial emotional distress' as the harm, Congress ignored the citizen's right to freely communicate under the First Amendment's protection." (*Id.* at 9).  It is true that a heightened standard generally applies to speech about public officials.  For example, a public figure must generally prove "actual malice" in addition to the usual elements of defamation in order to maintain such a defamation claim against the speaker in a manner that does not violate the First Amendment.  But that does not render public officials unprotected from true threats or speech integral to criminal conduct, and Moreland has not cited any authority that dictates that public figures cannot be victims of cyberstalking or any other criminal behavior.  In addition, Moreland has not specified what heightened standard he claims should apply to conduct that is directed at a public figure.[2]

---

[2] Moreland argues that *Bowker*, 372 F.3d at 379, recognized that a victim who is a public figure may impact the analysis of a criminal statute prohibiting telephone harassment.  The referenced statement in *Bowker* – in which the court noted that calls "to a public official with intent to annoy him or her about a political issue" might be unconstitutional as applied, *see id.* – does not apply here.  While many of Mr. Moreland's 394 emails referenced matters of arguable public concern or political interest, numerous other emails had nothing to do with any issue of political or public concern.

The First Amendment permits legal proscriptions of true threats, which the Supreme Court has said "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* (citations omitted). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat. . . ." *Id.* As noted, § 2261A(2) expressly includes an element of intent to intimidate, which has also been charged in the Indictment in this case.

Moreland further asserts that *Elonis v. United States*, 135 S. Ct. 2001 (2015) requires dismissal of the Indictment. Unlike § 2261A(2), the criminal statute considered in *Elonis* – 18 U.S.C. § 875(c) – was completely silent on *any* mental state requirement. *See Elonis*, 135 S. Ct. at 2004, 2010. As a result, the Supreme Court noted that it must "read into the statute 'only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)). In so doing, the Court held that "the mental state requirement . . . is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 2012. In contrast to the statute at issue in *Elonis*, § 2261A(2) expressly requires proof that Moreland, "*with the intent to . . . injure, harass, [or] intimidate . . .* ," engaged "in a course of conduct that . . . cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress" to the person whom Moreland intended to injure, harass, or intimidate.

8

Contrary to Moreland's argument, the statute does not criminalize a defendant's mere transmission of communications that could be perceived by anyone as merely annoying or insulting. Instead, a conviction under the statute requires proof beyond a reasonable doubt that his communications caused, attempted to cause, or were reasonably expected to cause substantial emotional distress, *and* that such transmissions were made *with the intent* to intimidate, harass, or injure. *See* 18 U.S.C. § 2261A(2)(B). Moreland's counsel has acknowledged that at least some of Moreland's communications may be "construed as scary." (Doc. 22 at 2). What he intended by such "scary" communications and whether he had the requisite intent is for the jury to decide, as the Court has no information as to defendant's intent in directing those "scary" communications to CP.[3]

At the motions hearing, defense counsel suggested that a criminal statute cannot be utilized to punish speech that does not cause violence or bodily harm. However, as noted, the Supreme Court has held that criminal statutes may proscribe communications that are made with knowledge that they will be viewed as threatening, *see Elonis*, 135 S. Ct. at 2012, as well as communications that are "true threats," which include communications that may be made without any actual intent of carrying out violence, *see Black*, 538 U.S. at 359.

---

[3]  As evidence of Moreland's intent to intimidate, harass, or injure, the government cites a communication that Moreland sent to Greg Gutfeld, a colleague of CP's, in which Moreland stated:

> . . . when people ignore [his] PUBLIC POSTS, I pursue them until they act accordingly. Sometimes that involves legal filings or COMPREHENSIVELY FUCKING WITH YOU ONLINE, BECAUSE PEOPLE BELIEVE SHIT & YOU CAN USE THAT AGAINST THEM TO ENGAGE BEHAVIORS WITH CALLS TO ACTION. (Doc. 56 at 2).

While this may be some evidence of Moreland's intent, the Court need not determine that issue, as it is one for the jury to determine after weighing the evidence in this case.

### B. Vagueness Challenge

A law can be unconstitutionally vague on its face or in application. *United States v. Rodebaugh*, 798 F.3d 1281, 1294 (10th Cir. 2015). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* at 1295 (quoting *Jordan v. Pugh*, 425 F.3d 820, 824-25 (10th Cir. 2005) and *Hill v.* Colorado, 530 U.S. 703, 732 (2000)). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496 n.7 (1982)). An as-applied challenge fails when a defendant has knowledge of the illegality of his activities. *Id.*

The defendant's vagueness arguments fail for the same reasons the Court has rejected his overbreadth arguments. He asserts that § 2261A(2) is vague because Congress has not provided a definition of "harass" or "substantial emotional distress" and thus citizens have not been provided fair warning of what conduct violates the statute. As noted above, courts have rejected similar arguments relating to the statute. *See, e.g., Petrovic*, 701 F.3d at 856; *Osinger*, 753 F.3d at 945; *Sayer*, 748 F.3d at 434-36. While Moreland attempts to distinguish these authorities, their reasoning applies to many of his arguments, including his contention that he was without notice of what conduct would violate the statute. Moreland's argument that the statute prohibits protected speech that is merely annoying or insulting has also been rejected. In *Sayer*, the defendant argued that the cyberstalking statute "encompasses speech that causes only substantial emotional distress" and therefore "proscribes protected expression that is merely annoying or insulting." 748 F.3d at 435. The First Circuit disagreed and concluded that the statute had many

legitimate applications. *Id*. The statute requires an intent to harass or intimidate, and appellate courts have noted that the specific intent requirement mitigates any potential vagueness in the statutes. *See, e.g., Shrader*, 675 F.3d at 311; *Osinger*, 753 F.3d at 945.

Moreover, the definition of "course of conduct," which is an element of the statute that the government must prove beyond a reasonable doubt, undermines Moreland's contention that he was unable to discern what conduct was proscribed. By definition, the government must establish that he engaged in a pattern of conduct – not just a single act – which evidenced a continuity of purpose. 18 U.S.C. § 2266(2) ("The term 'course of conduct' means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."). That element, combined with the statute's intent element, eliminates a risk of conviction for some unknowing or accidental transmission of merely insulting or annoying communications.

The Court is also unable to determine that the statute is unconstitutional as applied to Moreland's conduct here. He principally argues that the emails, taken together or alone, do not comprise a true threat because CP did not ask him to stop, CP is a public figure who "involved herself in the most contentious arenas of the public fray," and the "bulk of [his] emails concerned politics." (Doc. 22 at 14). It is true that many of Moreland's emails to CP referenced topics that concern matters at least touching on politics or similar issues of public concern. But his communications to CP went well beyond political statements or comments about issues of public concern. His communications directly referenced violence, indicated frustration that CP would not respond to his hundreds of emails, reflected concern that CP or someone on her behalf wanted to kill Moreland, stated that it was time to "eliminate things" and "fight to the death," informed plaintiff that he knew where her brother was, and repeatedly conveyed that he expected a confrontation with CP or others on her behalf. Along with his numerous emails conveying

11

purported perceptions that he had a relationship with CP (which he did not) and that she wanted to kill him, indicating that he might show up in the city of CP's workplace to force some acknowledgement of him, and stating that he welcomed a violent confrontation, the Court concludes that the statute is not unconstitutional as applied, as the words are in the nature of a true threat and speech integral to criminal conduct.

### C. Sufficiency of the Indictment Regarding "CP's Immediate Family"

In his second motion, Moreland argues that the Indictment is insufficient and is supported by insufficient evidence to the extent that it includes the language "and CP's immediate family." (*See* Doc. 2). Ordinarily, a motion to dismiss an indictment does not involve consideration of "whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006). However, "a district court may 'dismiss charges at the pretrial stage . . . where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case.'" *Id.* A dismissal under that exception "is the 'rare exception,' not the rule," and is granted where "undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." *Id.* (internal citations omitted).

Here, the Court is persuaded that this case does, in part, present the type of "rare exception" which requires dismissal or striking of the Indictment's charging language that the government represents to include any member of "CP's immediate family" as a *victim* of Moreland's communications to CP or as subjects who suffered substantial emotional distress as a

result of Moreland's conduct.[4] The defendant's motion is premised upon a lack of the Indictment's identification of the "immediate family members" of the alleged victim, CP, and an absence of evidence that CP's "immediate family members" suffered "substantial emotional distress" as a direct result of Moreland's conduct. (*See* Doc. 44). The government does not directly contest those arguments, although it indicates that it may present some evidence of distress that was experienced by CP's brother as a result of certain of Moreland's communications which CP forwarded to her brother.

Moreland also claims that "'immediate family' is an indefinite, imprecise term." That argument is inconsistent with the statute's express definition of "immediate family member," which is "as defined in section 115," and thus includes a "spouse, parent, brother or sister, child" or "any other person living in his household and related to him by blood or marriage," 18 U.S.C. § 115(c)(2), 2261A(1)(A)(ii). However, Moreland correctly points out that the failure to specify which "immediate family" of CP – amongst the very broad definition of that group – were alleged victims renders the Indictment deficient to properly notify the defendant of any particular charge as to the immediate family.

Moreover, on the undisputed evidence here, the Court concludes as a matter of law that Moreland could not have committed a § 2261A(2)(B) offense against CP's immediate family, because CP is the only alleged victim to whom the statute could apply. That is because the

---

[4] The government has been inconsistent in its assertions as to whether CP's immediate family members were "victims" identified in the Indictment. At the September 14, 2016 pretrial conference, the government indicated, correctly, that the family members are *not* victims and CP is the only victim. But it indicated otherwise in response to the Second Motion to Dismiss, where the government expressly referred to CP and her immediate family as "victims." (Doc. 56 at 1 [referencing "the victims, 'CP' and her immediate family"]; *see id.* at 3 ["The Grand Jury indictment identified 'CP' and 'CP's immediate family' as victims of Defendant's harassing, intimidating, and threatening course of conduct."]). The position in that response was itself a change from the government's references in its prior filings to a single "victim," CP. (*See, e.g.,* Doc. 17 at 2, 3, 4, 5, 15, 17; Doc. 26 at 1, 8, 10).

statute requires proof beyond a reasonable doubt that Moreland: acted with the intent to injure, harass, or intimidate "another person"; by engaging in a "course of conduct"; using a communication system in interstate commerce; and where such conduct caused, attempted to cause, or was reasonably expected to cause substantial emotional distress to "that person" or "an immediate family member . . . of that person."  18 U.S.C. § 2261A(2)(B).  While "immediate family member" is included within the persons who are potentially caused distress, the statute makes clear that the victim is the "person" whom a defendant intends to injure, harass, or intimidate, by his course of conduct – that is, a pattern of 2 or more acts using an interstate commerce communications system.

*It is undisputed in this case that Moreland did not contact any member of CP's immediate family even once, much less that he engaged in a pattern of 2 or more acts with the intent to injure, harass, or intimidate any such immediate family member or with the purpose, attempt, or expectation that such family members would suffer substantial emotional distress.* With regard to CP's family, the undisputed evidence indicates, at most, that CP forwarded or informed one or more family members of Moreland's communications.  In the absence of evidence that Moreland himself contacted CP's family or had any intent to intimidate them through the requisite course of conduct, the defendant could not have committed any offense *against them*, and there is no nexus whatsoever to show that Moreland, *by his own conduct*, caused the immediate family members emotional distress.  The government has not explained how a crime that caused the immediate family members to suffer substantial distress could have been completed – not by the defendant's own acts or pattern of conduct – but by *CP's actions* in forwarding Moreland's communications to her family members.  Thus, the undisputed evidence establishes, as a matter of law, that Moreland could not have committed a § 2261A(2)(B) offense

14

against any of CP's immediate family members, and there is no evidence that he engaged in a course of conduct intended to cause them distress. Any other reading or application of § 2261A(2)(B) to consider a crime allegedly completed by *CP's* transmission of emails to her immediate family members, thereby causing them substantial emotional distress, would render the inclusion of "immediate family member" within that subsection unconstitutionally vague as applied to the evidence here.[5]

Accordingly, the defendant's Second Dismissal Motion (Doc. 44) is granted in part, to the extent that the charging language "and CP's immediate family" will not be considered by the jury at trial, and CP's immediate family shall not be presented as alleged victims or as subjects who were substantially emotionally distressed as a result of Moreland's conduct.[6] In the alternative, pursuant to Fed. R. Crim. P. 7(d), that language – "and CP's immediate family" – is stricken as surplusage.

---

[5] The Court can conceive of circumstances where a defendant may violate § 2261A(2)(B) by delivering items which, while addressed to a particular person, are delivered to that person's home with the intent to harass or intimidate and cause substantial emotional distress to the addressee as well as to immediate family members occupying the home. But there is no such evidence here, and it is undisputed that Moreland did not direct a single communication to any of CP's family members.

[6] This ruling does not mean, however, that evidence of defendant's conveyance *to CP* of any implied threats of harm to her family is irrelevant at trial. Such evidence appears relevant to the charge that Moreland acted with intent to harass, injure, or intimidate *CP* and to cause, attempt to cause, or with the expectation of causing, *her* substantial emotional distress in violation of § 2261A(2)(B).

### III. Conclusion

For the foregoing reasons, the First Motion to Dismiss (Doc. 22) is **denied**, and the Second Motion to Dismiss (Doc. 44) is **granted in part**, as set forth above.[7]

SO ORDERED this 14th day of September, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[7] "[W]ithdrawing a part of the charge from jury consideration does not work an amendment if nothing is thereby added to the indictment. Withdrawal that narrows the defendant's liability is permissible . . . so long as the remaining allegations state an offense and give the defendant notice of the charges he must be prepared to meet." *United States v. Whitman*, 665 F.2d 313, 316, n.3 (10th Cir. 1982) (internal citations omitted); *see also United States v. Burns*, 624 F.2d 95, (10th Cir. 1980) ("It is clear that a court may withdraw from jury consideration indictment counts unsupported by evidence. The fact that here the court withdrew one of two charges contained in a single count is inconsequential. The controlling principle is that ". . . a portion of an indictment that the evidence does not support may be withdrawn from the jury, and this is not an impermissible amendment, provided nothing is thereby added to the indictment, and that the remaining allegations charge an offense.") (internal citations omitted); *United States v. Hornung*, 848 F.2d 1040, 1046 (10th Cir. 1988) ("This court has consistently stated . . . that withdrawing a part of the charge from jury consideration does not work an amendment if nothing is thereby added to the indictment and the remaining allegations charge an offense.") (collecting cases). Striking the language as directed by this Opinion and Order does not constitute an amendment, as the remaining allegations in the Indictment charge an offense, and the Court's ruling renders any evidence of emotional distress suffered by CP's family to be irrelevant and inadmissible. The defendant has notice of what evidence will be presented, and there is no risk of subsequent prosecution based on the same evidence as to his communications with CP. Accordingly, the Court's ruling likewise does not constitute a variance or constructive amendment. *See Whitman*, 665 F.2d at 318.